# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

KAREN HUGHES and
FRANK HUGHES,

    Plaintiffs,

v.                                                                                 Civil Action No. 2:09-CV-93
                                                                                             (BAILEY)

SEARS, ROEBUCK AND CO., and
ICON HEALTH AND FITNESS, INC., and
JOHN DOE, a corporate entity, and
JOHN LOGAR, M.D.,

    Defendants.

## ORDER GRANTING DEFENDANTS SEARS, ROEBUCK AND CO.'S AND ICON HEALTH AND FITNESS, INC.'S MOTION TO SEVER CLAIMS AGAINST DEFENDANT JOHN LOGAR, M.D. AND DENYING PLAINTIFFS' MOTION TO REMAND

Currently pending before the Court are Defendants Sears, Roebuck and Co.'s ("Sears") and Icon Health and Fitness, Inc.'s ("Icon") Motion to Sever [Doc. 6], filed July 29, 2009, and Plaintiffs' Motion to Remand [Doc. 10], filed August 12, 2009. Plaintiffs responded to Defendants' Motion to Sever on August 12, 2009 [Doc. 12], and Defendants Sears and Icon replied on August 21, 2009 [Doc. 13]. Also on August 21, 2009, Defendants Sears and Icon responded to Plaintiffs' Motion to Remand [Doc. 14], and Plaintiffs replied on August 28, 2009. [Doc. 18]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Defendants' Motion to Sever [Doc. 6] should be **GRANTED** and Plaintiffs' Motion to Remand [Doc. 10] should be **DENIED**.

**BACKGROUND**

The plaintiffs, Karen Hughes and Frank Hughes, filed this action in the Circuit Court of Barbour County, West Virginia on June 25, 2009. [Doc. 1-1]. The Complaint alleges a medical misdiagnosis of Karen Hughes that occurred when she sought treatment after falling from a treadmill, which she claims malfunctioned. (Id.). Specifically, on June 26, 2007, Ms. Hughes was exercising on the Pro-Form 44E Crosswalk Treadmill, which had been purchased from Sears. According to Ms. Hughes, at some point during her exercise, the treadmill "began to rapidly accelerate causing [her] to lose her footing and be thrown off of the treadmill." (Id. at 3). Some time thereafter, on the day of the incident, Ms. Hughes sought medical treatment from Defendant John Logar, M.D. ("Dr. Logar") in the emergency room at Davis Memorial Hospital in Elkins, West Virginia for injuries sustained from the fall. (Id. at 7). While receiving treatment from Dr. Logar, Ms. Hughes was allegedly misdiagnosed with potential strains and sprains of both arms. (Id.). The actual injuries sustained, however, were fractures of the upper humerus in both arms. (Id.). The plaintiffs' Complaint alleges that Ms. Hughes has also suffered "medical expenses, pain and suffering, mental anguish, [a] disabled condition, and [the] loss of enjoyment of life" as a result of actions by the defendants, Sears, Icon, John Doe, and Dr. Logar. (Id. at 8).

The Complaint asserts five different counts: Count I alleges products liability based upon negligence by Sears that caused Ms. Hughes to suffer "severe physical injuries of a permanent nature[,] emotional trauma[, and] the of consortium" by Mr. Hughes; Count II is a products liability claim against Icon based in both strict liability and negligence for the allegedly defective treadmill; Count III is a loss of consortium claim on the part of Mr. Hughes; Count IV alleges negligence by a "John Doe" corporation, which represents the

"additional corporate entities [that] may be responsible in whole or in part for the manufacture or design" of the treadmill; and Count V is a medical malpractice claim premised on the alleged misdiagnosis that caused, *inter alia*, "severe and extreme pain." (Id. at 3-7).

On July 29, 2009, Sears and Icon filed a Notice of Removal [Doc. 1], premised upon diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1441. The Notice stated that the plaintiffs are both citizens of West Virginia and that the properly joined defendants, Sears and Icon, are citizens of Illinois and Utah, respectively, because each has its principal place of business in those states.[1] ([Doc. 1] at 2). Sears and Icon argue that although Dr. Logar is a citizen of West Virginia for purposes of jurisdiction, Dr. Logar was fraudulently misjoined, and thus, his citizenship does not defeat diversity. (Id. at 5-8). Accordingly, Sears and Icon, seek to sever the claims against Dr. Logar, who was misjoined, but allow the claims against Sears, Icon, and John Doe to remain in federal court. (Id. at 8). Filed contemporaneously with the Notice, therefore, was Sears' and Icon's Motion to Sever. (Id.).

On August 12, 2009, the plaintiffs filed the pending Motion to Remand. In their memorandum [Doc. 11], the plaintiffs argue that Dr. Logar was properly joined, and thus, complete diversity does not exist, necessitating remand. ([Doc. 11] at 8). In support of this contention, however, the plaintiffs devote almost the entire memorandum to the law of

---

[1] For the purposes of this removal, the citizenship of Defendant "John Doe" is disregarded. 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.").

fraudulent joinder, as opposed to fraudulent *mis*joinder.[2] (Id. at 3-4).

In their response [Doc. 14], filed August 21, 2009, Sears and Icon clarify that they did not seek removal based on fraudulent joinder, but fraudulent *mis*joinder. ([Doc. 14] at 7-8). Specifically, Sears and Icon assert that the claims against Dr. Logar were not properly joined with the claims against them and should be severed and remanded, while the claims against them should be retained. (Id. at 8). On August 28, 2009, the plaintiffs filed a reply [Doc. 18], arguing that a court should "analyze . . . claims for fraudulent *mis*joinder through the prism of the review standards in previous holdings, which contemplated fraudulent joinder." ([Doc.18] at 4, n. 1) (emphasis in original). This type of analysis, according to the plaintiffs, should lead this Court to find that Sears and Icon were properly joined with Dr. Logar, defeating diversity and requiring remand. (Id. at 7).

## DISCUSSION

**I. Standard**

Defendants in state civil actions, who are not themselves citizens of the state in which the action was filed, may remove the case to a federal district court if the court has original jurisdiction. 28 U.S.C. § 1441(a). However, as the Fourth Circuit has indicated, if federal jurisdiction is doubtful, the case must be remanded. **Mulcahey v. Columbia Organic Chems. Co.**, 29 F.3d 148, 151 (4th Cir. 1994).

Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and all the plaintiffs are citizens of different states than each defendant. **Lincoln Property Co. v. Roche**, 546 U.S. 81, 84 (2005). Typically, diversity jurisdiction is determined from "the

---

[2]The distinction between the two doctrines is outlined in the "Discussion" section.

4

face of the plaintiff's well-pled complaint." *Ashworth v. Albers Medical Inc.*, 395 F.Supp.2d 395, 402 (S.D. W.Va. 2005).

The exceptions to this well-pled complaint rule are the distinct legal doctrines of fraudulent joinder and fraudulent misjoinder. In the context of diversity jurisdiction, these exceptions allow courts to disregard the citizenship of certain parties. In asserting fraudulent joinder, a defendant seeking removal argues that other defendants were improperly joined because either there is no possible successful cause of action against those defendants or the complaint pled fraudulent facts. *See Wyatt v. Charleston Area Med. Ctr., Inc.*, No. 2:09-cv-00685, 2009 U.S. Dist. LEXIS 61985 (S.D. W.Va. July 20, 2009) (citing *Ashworth*, 395 F.Supp.2d at 403).

On the other hand, fraudulent misjoinder, is "an assertion that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included in order to defeat diversity jurisdiction and removal." *Id.* (citing *Ashworth*, 395 F.Supp.2d at 409-10).

When the Eleventh Circuit created the doctrine of misjoinder, it noted that:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's right or removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy . . . . We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder.

*Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (internal quotations omitted), *abrogated on other grounds by*, *Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000). Based upon the *Tapscott* Court's emphasis on the egregiousness

5

of the misjoinder, some courts have noted that "something more than 'mere misjoinder' of parties may be required to find fraudulent misjoinder. Precisely what the 'something more' is was not clearly established in *Tapscott* and has not been clearly established since." *In re Bridgestone/Firestone, Inc.*, 260 F.Supp.2d 722, 728 (S.D. Ind. 2003). However, it is clear that the core issue is whether there is a "reasonable possibility that a state court would find that [the plaintiffs'] claims against [one set of defendants] were properly joined with [the] claims against the other defendants[.]" *Conk v. Richards & O'Neil, LLP*, 77 F.Supp.2d 956, 971 (S.D. Ind. 1999); *see also Ashworth*, 395 F.Supp.2d at 410. To find that defendants are properly joined, a plaintiff must satisfy the requirements of Rule 20(a) of the Federal Rules of Civil Procedure, which states in pertinent part that:

> Persons . . . may be joined in one action as defendants if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. . . .

Fed. R. Civ. P. 20(a); *see also* W.Va. R. Civ. P. 20(a).

In evaluating the requirements within Rule 20(a), the *Ashworth* court noted that:

> [t]he rule imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted out of the same transaction or occurrence; and [2] some question of law or fact common to all the parties will arise in the action. Both of these requirements must be satisfied in order to sustain party joinder under *Rule 20(a)*.

*Ashworth* 395 F.Supp.2d at 411. According to *Ashworth*, Rule 20(a) "should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Id.*

With regard to the first prong, the *Ashworth* court explained:

6

> The test under the first prong does not require absolute identity of events and would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. . . [T]his test is similar to the logical relationship test under *Rule 13(a)* in which all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. . ..

*Id.*

As for the second prong, the ***Ashworth*** court noted:

> The second prong . . . does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be at least one common question of law or fact.

*Id.* at 411-12.

Although some federal district courts faced with fraudulent misjoinder claims have required both a finding of misjoinder and a finding of a bad faith attempt to defeat diversity, *See* ***Wyatt v. Charleston Area Med. Ctr., Inc.***, No. 2:09-cv-00685, 2009 U.S. Dist. LEXIS 61985, at *16-17 (S.D. W.Va. July 20, 2009), others have rejected an application of the "egregious" standard when considering misjoinder in the context of remand petitions. *See* ***Burns v. W. S. Life Ins. Co.***, 298 F.Supp.2d 401, 403 (S.D. W.Va. 2004); ***Grennell v. W. S. Life Ins. Co.***, 298 F.Supp.2d 390, 397 (S.D. W.Va. 2004); ***Greene v. Wyeth***, 344 F.Supp.2d 674 (D. Nev. 2004); ***In re Rezulin Prods. Liab. Litig.***, 168 F.Supp.2d 136 (S.D. N.Y. 2001); ***In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.***, No. 07-1487, 2007 U.S. Dist. LEXIS 64942 (D. Minn. Aug. 30, 2007). As noted by some commentators, requiring an additional showing that the misjoinder is egregious would cloud an already difficult decision:

> [T]he fraudulent-joinder doctrine and its allied jurisprudence adds a further level of complexity – and additional litigation – to a federal court's decision regarding removal jurisdiction. The complexity is increased if the Eleventh

> Circuit's admonition that not all procedural misjoinder rises to the level of fraudulent joinder is accepted and because numerous additional decisions will be needed to clarify the distinction.

*Burns*, 298 F.Supp.2d at 403 (quoting 14B Charles Alan Wright *et. al.*, FEDERAL PRACTICE & PROCEDURE § 3723)

The Fourth Circuit has not addressed the issue. Here, as the court in *Greene* found, this Court "rejects the notion that Plaintiffs have committed an egregious act or fraud upon the Court." 344 F.Supp.2d at 685. Where a non-diverse party cannot be properly joined under the Federal Rules of Civil Procedure, the defendant's right of removal should prevail over that of permitting a plaintiff's choice of forum. *See Id.* Therefore, this Court will apply only the two requirements within Rule 20(a) to determine whether there is misjoinder that requires severance of claims. Upon a finding that both requirements are satisfied, this Court will follow the appropriate course of action, which is to sever the claims against the misjoined defendant. Fed. R. Civ. P. 21; *see also Ashworth*, 395 F.Supp.2d at 412.

## II. <u>Analysis</u>

In the instant case, Sears and Icon argue that if it were not for the fraudulent *mis*joinder of Dr. Logar, this Court would have original jurisdiction under its diversity jurisdiction, pursuant to 28 U.S.C. § 1332. This Court must, therefore, decide whether the plaintiffs joined the claims against Dr. Logar with the claims against Sears and Icon "where the presence of [Dr. Logar] would defeat removal and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard." *Conk*, 77 F.Supp.2d at 971. To make this determination, this Court must answer two questions: (1) whether the claims against Dr. Logar arise out of the same transaction or occurrence as

8

the claims against Sears and Icon and (2) whether there is at least one common question of law or fact between the claims against Dr. Logar and the claims against Sears and Icon. Fed. R. Civ. P. 20(a); see **Ashworth**, 395 F.Supp.2d at 411-12.

### A. Same Transaction/Occurrence

Sears and Icon argue that although the alleged misdiagnosis and fall from the treadmill occurred within the same day, proximity in time is not enough to blend these two distinct and separate events. This Court agrees.

Several courts have analyzed whether malpractice claims can be properly joined with products liability claims. However, this issue typically arises in the context of malpractice because of the malfunctioning or misuse of a defective or recalled medical device. See **Wyatt v. Charleston Area Med. Ctr., Inc.**, No. 2:09-cv-00685, 2009 U.S. Dist. LEXIS 61985 (S.D. W.Va. July 20, 2009); **In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.**, No. 07-1487, 2007 U.S. Dist. LEXIS 64942 (D. Minn. Aug. 30, 2007). Both of these cases involved complications following defibrillator explant surgery, yet the misjoinder in each case was resolved differently. In each case, the plaintiffs joined their claims against the treating physician with their claims against the manufacturer of the defibrillator. In holding that the malpractice claims were not misjoined with those based upon product liability, the **Wyatt** court found that "[a]ll of these claims for relief arise out of the same occurrence: Ms. Wyatt's surgery and the after effects of that surgery." **Wyatt**, at *15. In reaching the opposite conclusion, the **In re Guidant** court based its holding upon the evidence that would be required at trial to prove each of the claims:

9

> Brown's claim against Dr. Housman is medical negligence, which would require evidence on Brown's care, treatment, and services provided by Dr. Housman. Brown's claims against either Guidant or EVT are general negligence or product liability claims[, which] would require evidence on the development, manufacture, and testing of Brown's [defibrillator] along with evidence of Guidant and EVT's knowledge, warnings, and representations regarding defective [defibrillators].

*In re Guidant*, at *7-8.

Two relevant observations arise from comparing these cases. First, courts, faced with nearly identical facts, differ drastically in applying the first prong of Rule 20(a), even though it might appear logical that the after effects of a surgery arise from the same transaction or occurrence as the surgery itself. Second, the instant case is not such a close call. The essence of the claims against Sears and Icon arise from the design, testing, manufacture, and sale of a consumer product from which Ms. Hughes fell and eventually sought treatment from Dr. Logar who, then, allegedly provided a misdiagnosis. Unlike the doctors in *Wyatt* and *In re Guidant*, Dr. Logar had no control over the allegedly defective product. Thus, here, there is no such bridge to provide a persuasive argument that the medical malpractice and products liability claims arise out of the same transaction or occurrence.

Moreover, as relied upon in *In re Guidant*, the evidence supporting these claims will be markedly different. For example, the claims against Sears and Icon will require evidence on the design, testing, manufacture, and sale of the allegedly defective treadmill. In stark contrast, the medical malpractice claims against Dr. Logar will require evidence on Dr. Logar's care, treatment, and services, as provided to Ms. Hughes. Therefore, this Court finds that the medical malpractice and the product liability claims do not arise from

the same transaction or occurrence.

### B. Common Question of Law or Fact

Plaintiff argues the determination and apportionment of damages caused from the fall and alleged misdiagnosis present questions of law and fact common to all the defendants. This Court disagrees. The allegations included in the Complaint against Sears and Icon are legally and factually distinct from the allegations against Dr. Logar. The claims against Sears and Icon involve product liability legal theories, whereas the claims asserted against Dr. Logar involve a medical negligence claim.

Thus, any liability that may be found against Sears and Icon or Dr. Logar would not be a basis for liability as to the other, and separate liability as to each could be found. Specifically, whether Dr. Logar is found liable for malpractice has absolutely no effect on whether Sears and Icon are found liable under a theory of products liability. Conversely, whether the plaintiffs are successful in their claims against Sears and Icon does not depend whatsoever upon whether they are successful in their claims against Dr. Logar. Thus, this Court finds that the claims in the instant case do not share a common question of law or fact.

Therefore, applying the two requirements of Rule 20(a), the Court finds that the plaintiffs improperly joined Dr. Logar because the medical malpractice claims against him do not arise out of the same transaction or occurrence as the product liability claims against Sears and Icon, and these claims do not involve common questions of law or fact. Accordingly, the Court will sever the claims against Dr. Logar from the claims against Sears and Icon, so as to preserve Sears and Icon's right to removal in the remaining action and

to preserve the interests of judicial expediency and justice.

## **CONCLUSION**

For the reasons set forth, it is accordingly **ORDERED** that:

1. The motion of defendants Sears, Roebuck, and Co., and Icon Health and Fitness, Inc., seeking to sever and remand to the Circuit Court of Barbour County, West Virginia, the claims of plaintiffs Karen Hughes and Frank Hughes against John Logar, M.D., be, and it hereby is, **GRANTED**.

2. The claims of plaintiffs Karen Hughes and Frank Hughes against John Logar, M.D., be, and they hereby are, **SEVERED** and **REMANDED** to the Circuit Court of Barbour County, West Virginia; and

3. The motion of plaintiffs Karen Hughes and Frank Hughes seeking to remand their claims against the remaining non-diverse defendants be, and it hereby is, **DENIED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record as well as to the Circuit Court of Barbour County, West Virginia.

**DATED**: September 3, 2009

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE